**Richard L. GALLOIS, Jr., Plaintiff-Appellant,**

v.

**COMMERCIAL SECURITIES COMPANY, INC. Defendant-Appellee.**

No. 79–3473.

United States Court of Appeals
Fifth Circuit.*
Unit A

Nov. 16, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Patrick D. Breeden, New Orleans, La., for plaintiff-appellant.

Michael H. Rubin, Robert A. Hawthorne, Jr., Baton Rouge, La., Harry V. Singreen, New Orleans, La., for defendant-appellee.

Before BROWN, AINSWORTH and GEE, Circuit Judges.

PER CURIAM:

In March, 1973, Richard L. Gallois (Gallois) borrowed $1230.00 from Commercial Securities Co. (Commercial) to be repaid in 30 monthly installments. Gallois signed a note which provided that interest would be charged at the highest rate authorized by Louisiana law if not paid in full by the contract maturity date, and also included a chattel mortgage which evidenced a credit life insurance policy with the premium paid by the borrower. In February, 1974, Gallois filed a complaint in the District Court alleging that Commercial was in violation of the Truth-in-Lending Act (TIL), 15 U.S.C. § 1601 *et seq.*, and Regulation Z of the Federal Reserve Board, 12 C.F.R. § 226.1 *et seq.* In 1976, the District Court held that Commercial had violated TIL and Regulation Z by not disclosing on the disclosure statement the details of the acceleration charge. The court did not reach the other issues raised by the parties.

In February, 1977, the District Court set aside its former judgment on the basis of this Court's opinion in *Martin v. Commercial*, 539 F.2d 521 (5th Cir. 1976), and the court granted a motion by Gallois to decide all outstanding issues. Subsequently the court denied Gallois' motion to reinstate the former judgment on the basis of this Court's action in *McDaniel v. Fulton*, 571 F.2d 948 (5th Cir.) (en banc), *clarified* 576 F.2d 1156 (5th Cir. 1978) (en banc). In January, 1979, the court denied Gallois' motion for partial summary judgment on the basis of Commercial's failure to disclose a security interest because that motion came "too late to be considered in this case." Finally, an opinion was issued in September, 1979, deciding all issues against Gallois, who brings this appeal. We affirm.

### I.

■ The first issue is whether Commercial violated TIL by failing to disclose certain information about the consequences of an acceleration charge. This claim is without merit in light of *Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), where the Supreme Court held that "acceleration rebate practices need be disclosed only when they diverge from other prepayment rebate practices." *Id.* at 569, 100 S.Ct. at 798, 63 L.Ed.2d at 33. We find no variance between Commercial's acceleration rebate policy and its custom with respect to voluntary repayment rebates, especially since Louisiana law requires that these two policies be the same. La.R.S. 9:3529 (West Supp. 1980)

### II.

■ Next, it is contended that the court by its January 1979 order erred in refusing to hear Gallois' newly raised argument that Commercial failed to disclose on the front of the agreement that it had a security interest based on the fact that credit life

insurance and accident and health insurance policies were sold to secure payment of the loan. It is evident that the court's action is within the judge's sound discretion, *Lamar v. American Finance System of Fulton County, Inc.*, 577 F.2d 953, 954–955 (5th Cir. 1978), and we find no abuse of that discretion.

### III.

■ Gallois claims that Commercial also violated Regulation Z by not disclosing the right to interest after maturity.[1] We agree with the District Court that the post-maturity interest was not a late charge that required disclosure, but is merely interest on the outstanding debt.[2]

Both the promissory note and the chattel mortgage executed by Gallois provided that after contractual maturity date, interest would be charged at the highest rate authorized by the Louisiana Consumer Credit Law for one year, after which time interest would be at the rate of 8% per annum until paid. Gallois argues that this provision should have been stated under "LATE CHARGES", and that the actual rate of 36% (the highest rate authorized for small loans in Louisiana) should have been stated. This Court recently held, in *Whitfield v. Termplan, Inc.*, 651 F.2d 383, 384 (5th Cir. 1981);

> We do not believe that a post-maturity interest rate on the outstanding balance constitutes a penalty or compensation for delay when the rate is the same as the interest rate of the loan itself.

In the present controversy, the annual percentage rate on the loan was 35.99%, and the post-maturity interest rate was 36% (under present Louisiana law), La.R.S. 9:3519(A), and 8% beginning one year after contractual maturity. Following *Whitfield*, we find that the post-maturity interest rate was substantially the same as the interest rate for the first 30 months (and one year

---

1. 12 C.F.R. § 226.8(b)(4) requires disclosure of the "amount, or method of computing the amount, of any default, delinquency, or similar charges payable in the event of late payments."

2. "A 'default, delinquency, or similar [charge],' on the other hand self-evidently refers to a specific accessible sum." *Milhollin*, 444 U.S. at 561, 100 S.Ct. at 795, 63 L.Ed.2d at 29. Post-maturity interest is not a specific sum.

after maturity the interest rate dropped considerably), and we conclude that this post-maturity interest was not a late charge requiring disclosure under Regulation Z.

## IV.

■ Finally, it is urged that Commercial did not use the correct "Rule of 78" in determining the amount of rebate for prepayment, and thus violated 12 C.F.R. § 226.-8(b)(7). Gallois contends that there is a "federal" rule of 78 that differs from Louisiana law, a contention we find has no merit. Regulation Z requires only the disclosure "of the method of computing any unearned portion of the finance charge in the event of prepayment." Commercial disclosed the method of calculation, and it is immaterial that Louisiana law differs somewhat from the rule of 78 as defined by the Federal Reserve Board.[3] We find Commercial's disclosure sufficient for purposes of 226.8(b)(7). *See Bone v. Hibernia Bank*, 493 F.2d 135 (9th Cir. 1974).

AFFIRMED.

---

**3.** *Bone v. Hibernia Bank*, 493 F.2d 135, 137 (9th Cir. 1974), elaborated on the Rule of 78's:

> The Rule of 78's is also known as the sum-of-the-digits and ratio methods. Under the Rule, when a loan is to be repaid in monthly installments, each month of the loan's term is assigned a digit, with the first month's digit equalling the total number of months in the agreed period of the loan. The second month is then assigned a digit one less than that of the first, the third month again one less, and so on, until the digit assigned to the last month equals (1) one. For a 12 month loan, the sum of the digits ... is 78. This number then serves as the denominator in a fractional equation, with the numerator being the sum of the digits for those months expired at the time of the obligation's prepayment....

Notably, there is no single "Rule of 78", and Regulation Z refers to the "methods known as the 'rule of 78's' or 'sum of the digits'." 12 C.F.R. § 226.8(b)(8). Various State statutory provisions for calculating the "Rule of 78's" exist. Louisiana's "Rule of 78", La.R.S. 9:3528, is substantially identical to many other states' statutory provisions, as well as the Uniform Consumer Credit Code's method of computation in § 2.210, C.C.H. Consumer Credit Guide ¶ 5070 at page 5642. The UCCC method has been referred to by the Federal Reserve Board as a "Rule of 78's". F.R.B. Official Staff Interpretation No. FC–0044, 41 Fed.Reg. 9385, Feb. 4, 1977, C.C.H. Consumer Credit Guide ¶ 31, 535. Specifically, Gallois points out that the Louisiana Rule of 78 differs from the classical or simple rule because Louisiana uses "one month after" the month of prepayment as the starting point, instead of using the month of prepayment itself. This Court recognizes the distinction, but we conclude (i) that the various state provisions similar to Louisiana's may properly be called rules of 78 for method identification purposes, and (ii) the classical or simplest method of computing the "Rule of 78's" is not the federal or "true" rule.